Maura Walsh Ochoa (SBN 193799)
E-Mail: mochoa@ghlaw-llp.com
Waylon J. Pickett (SBN 248865)
E-Mail: wpickett@ghlaw-llp.com
GROTEFELD HOFFMANN
655 Montgomery Street, Suite 1220
San Francisco, CA 94111
Telephone: 415.344.9670
Facsimile: 415.989.2802

Attorneys for Plaintiff
STATE FARM GENERAL INSURANCE COMPANY

# UNITED STATES FEDERAL DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STATE FARM GENERAL INSURANCE COMPANY, <br><br> Plaintiff, <br><br> vs. <br><br> THE UNITED STATES OF AMERICA; FCA US LLC, a corporation; CHRYSLER GROUP LLC, a corporation; SOUTAR'S, a corporation, dba SOUTARS AUTO GROUP; MOJAVE AUTO GROUP SOUTH, INC., a corporation; and DOES 1 through 50, inclusive, <br><br> Defendants. | **Case No.:** `'15CV1201 W    MDD` <br><br> **COMPLAINT FOR PROPERTY DAMAGE** <br>   **1. Negligence** <br>   **2. Product Liability** <br>   **3. Negligence** <br>   **4. Trespass** <br>   **5. Private Nuisance** <br><br> **DEMAND FOR JURY TRIAL** |

## JURISDICTION

1.     This is an action arising under the Federal Tort Claims Act, 28 U.S.C. §§2671 et seq. This Court has jurisdiction over the subject matter of this Complaint under 28 U.S.C. § 1346(b)(1), which provides, in part, that "[t]he district courts…shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property…[c]aused by the negligent or wrongful act or omission of any officer, employee or servant of the Government while acting

1

**COMPLAINT**

within the scope of his office or employment, under circumstances where the United States, if a person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

2. This action arises from the Chariot Fire that ignited July 6, 2013 and consumed approximately 7,055 acres and destroyed 122 residential structures, 29 outbuildings, and 66 vehicles (hereinafter, the "Chariot Fire").

3. The United States of America is a defendant to this action.

4. All corporate Defendants named herein at all relevant times either do or regularly did business in San Diego County and/or California.

## PROCEDURAL ALLEGATIONS

5. On May 12, 2014, Plaintiff timely filed an Administrative Tort Claim with the Defendant United States of America's Bureau of Land Management (hereinafter, "BLM"). Please see attached Exhibit 1.

6. BLM denied Plaintiff's Administrative Tort Claim on December 2, 2014, thereby permitting Plaintiff to file a lawsuit under the Federal Tort Claims Act in this Court. Please see attached Exhibit 2.

7. In accordance with 28 U.S.C. §2675(a), Plaintiff now files this action.

## PARTIES

8. Plaintiff State Farm General Insurance Company (hereinafter "PLAINTIFF") was and is an insurance carrier licensed to conduct and transact business in the State of California as an insurance company.

9. At all relevant times herein, PLAINTIFF provided policies of insurance to its insureds (hereinafter collectively referred to as "Insureds"), listed below, for their real and personal property:

2

**COMPLAINT**

a.  Mr. and Mrs. Robert and Patricia Adams, 11670 Sunrise Highway, Lot 102, Mt. Laguna, California 91948;

b.  Mr. and Mrs. Jack and Jessie Capps, Cabin 4 Al Bahr Shrine Camp, Mt. Laguna, California 91948; and

c.  Mr. and Mrs. John and Jamie George, Al Bahr Shrine Camp, Lot 3, Mt. Laguna, California 91948.

10.  At all relevant times, BLM was and is a federal agency within the United States Department of the Interior. BLM is responsible for the management and conservation of public lands, including the area of San Diego County where the Chariot Fire originated and burned.

11.  BLM employee Jason Peters is and at all relevant times herein was an employee and/or agent of BLM responsible for the area of San Diego County where the Chariot Fire originated.

12.  Defendant FCA US LLC, a corporation, is and at all relevant times herein was a Delaware corporation, with its headquarters and principal place of business in Auburn Hills, Michigan.

13.  Defendant CHRYSLER GROUP LLC, a corporation, is and at all relevant times herein was a Delaware corporation, with its headquarters and principal place of business in Auburn Hills, Michigan.

14.  It appears that in late 2014, CHRSYLER GROUP LLC may have changed its name to FCA US LLC.

15.  Defendants FCA US LLC and CHRYSLER AUTO GROUP LLC will hereinafter be collectively referred to as "CHRYSLER".

16.  Defendant SOUTAR'S, a corporation, dba SOUTARS AUTO GROUP, is and at all relevant times herein was a California corporation located at 1010 W Main Street, Barstow, California 92311.

3

**COMPLAINT**

17.   Defendant MOJAVE AUTO GROUP SOUTH, INC., a corporation, is and at all relevant times herein was a California corporation located at 1010 W. Main Street, Barstow, California 92311.

18.   It appears at some time after the subject incident SOUTAR'S may have sold the subject automobile dealership to MOJAVE AUTO GROUP SOUTH, INC.

19.   Defendants SOUTAR'S and MOJAVE AUTO GROUP SOUTH, INC. will hereinafter be referred to as the "DEALERSHIP".

20.   Defendant BLM is vicariously liable for the negligent, reckless, and/or intentional acts of Jason Peters and DOES 1 through 50, all of whom were acting in the course and scope of their employment as officers, employees, agents, and/or servants at all relevant times.

21.   Defendants DOES One (1) through Fifty (50), inclusive, are unknown to PLAINTIFF, who therefore sues said Defendants by such fictitious names. PLAINTIFF is informed and believes and thereon alleges that each of the Defendants designated herein as DOE are legally responsible in some manner for the events and happenings referred to herein. PLAINTIFF will ask leave to amend this Complaint when the true names and capacities of Defendants sued as DOES One (1) through Fifty (50) are ascertained.

22.   PLAINTIFF paid its Insureds, under the terms of their respective policies of insurance, for damages caused by the Chariot Fire.  As such, PLAINTIFF has become subrogated to the claims, rights, and demands of each of its Insureds against all Defendants herein to the extent of the payments made and to be made.

///

///

///

4

**COMPLAINT**

## GENERAL ALLEGATIONS

23.   This lawsuit is a subrogation action seeking redress for property damage, loss of use, and other related losses resulting from the Chariot Fire of July 2013.

24.   PLAINTIFF is informed and believes that in the afternoon of July 6, 2013, the Chariot Fire ignited when BLM employee Jason Peters, acting under the course and scope of his employment and/or agency with BLM, drove the BLM Jeep (hereinafter, the "JEEP") over tall and dry brush approximately nine (9) miles southeast of Julian on Sunrise Highway in San Diego County.

25.   The JEEP has been identified as a BLM vehicle with Government-issued license plate number I428127.

26.   Jason Peters was, at all relevant times alleged, the possessor, operator, and driver of the JEEP that ignited the Chariot Fire, with BLM's express and/or implied consent and permission, and within the course and scope of his employment with BLM.

27.   For several years prior to July 6, 2013, San Diego County, California experienced drought conditions. The conditions and circumstances on or about July 6, 2013, including the extended drought, high temperatures, low humidity, and dryness of vegetation, were not only reasonably foreseeable but were well known to Defendant BLM and its agents and employees.

28.   The Chariot Fire's general origin areas were located on property managed, administered, operated, and supervised by Defendant BLM and its agents and employees.

29.   On July 6, 2013, Jason Peters negligently ignited the Chariot Fire by, amongst other things, failing to inspect, notice, maintain, and/or clear debris and/or dry brush from the JEEP while driving on or around Highway S2 and the Great Southern Overland Stage Route, in an area southwest of Butterfield Ranch Resort in San Diego County. In addition, Jason Peters drove the JEEP in tall, dry

**COMPLAINT**

grass that is known or should have been known to cause a dangerous condition with the possibility of fire.

30.   Based on information and belief, the fire originated under the cab in the JEEP's chassis area below the transmission. Accumulated brush ignited from contact with the catalytic converter as a result of the design of the skid plate.

31.   Based on information and belief, the dry brush and/or debris under the JEEP ignited from contact with the catalytic converters, exhaust system, engine block, fuel delivery system, and/or other parts of the JEEP.

32.   Jason Peters, while acting under the course and scope of his BLM employment, continued to drive across and around the Great Southern Overland Stage Route area while his JEEP undercarriage was on fire, spreading material that ignited multiple areas of origin. The multiple areas of origin combined to form the Chariot Fire.

33.   The Chariot Fire consumed a total of 7,055 acres and destroyed 122 residential structures, 29 outbuildings and 66 vehicles.

## ALLEGATIONS PERTAINING TO CHRYSLER'S AND DEALERSHIP'S DEFECTIVE JEEP AND FAILURE TO RECALL

34.   The CHRYSLER and/or DEALERSHIP Defendants designed, manufactured, labeled, promoted, advertised, distributed, inspected, and/or sold the subject JEEP.

35.   The DEALERSHIP Defendants received the subject JEEP in the stream of commerce and distributed, promoted, advertised, inspected, transferred, and sold the subject JEEP to Defendant BLM.

36.   The JEEP was defectively designed and/or manufactured because vegetation and debris from outside the vehicle is easily susceptible to getting caught and being collected in the skid plate and undercarriage of the JEEP near or around the catalytic converters, exhaust system, and other parts of the JEEP.

**COMPLAINT**

37.   The subject JEEP was defective for other reasons related to the ignition of fire in, near, or around the engine compartment, exhaust system, and other areas of the vehicle.

38.   The defects in the subject JEEP were the cause or a substantial factor in causing the subject Chariot Fire and causing damages to PLAINTIFF.

39.   The subject JEEP was a 2009 model, which had a substantially similar or same design to the 2010 Jeep Wrangler. The 2010 Jeep Wrangler was recalled for a defective design that allowed debris from outside the vehicle to get caught and collect on its skid plates and undercarriage, thereby causing or starting a fire near or around the catalytic converters, exhaust system, and other parts of the 2010 Jeep Wrangler.

40.   In or around 2012, approximately one year prior to the Chariot Fire, CHRYSLER recalled more than 60,000 2010 Jeep Wranglers due to fire hazards caused by debris collection in the skid plate and fires igniting near catalytic converters, but knowingly, willfully, intentionally, and recklessly failed to recall any other Jeep Wrangler model years despite having the same or similar design defects that create the same or similar fire hazards.

41.   CHRYSLER, in relation to the recalled 2010 Jeep, drafted an owner notification letter which read in part, "The transmission skid plate on your vehicle (VIN:XXXXXXXXXX) may allow debris to collect in the undercarriage of the vehicle under certain driving conditions. If an excessive amount of debris collects in the undercarriage, the catalytic converter could ignite the debris, causing an underbody fire without warning."

42.   The "fix" to the recalled 2010 Jeep was the installation of a skid "bar" to replace a skid "plate", thereby reducing and/or eliminating the skid plate's ability to collect debris that could lead to the ignition of a fire near or around the catalytic converter or exhaust system, but CHRYSLER and DEALERSHIP Defendants knowingly, negligently, willfully, intentionally, and

7

**COMPLAINT**

recklessly failed to recall other Jeep Wrangler model years including the 2009, and failed to provide the same skid "bar" replacement instructions.

43.   Despite the owner notification for the 2010 Jeep Wrangler recall and skid plate to skid bar replacement instructions, CHRYSLER and DEALERSHIP knowingly, negligently, willfully, intentionally, and recklessly failed to notify owners of any other Jeep models including 2009 despite the same or substantially similar fire hazard due to the same or substantially similar design defect.

44.   The CHRYSLER and DEALERSHIP Defendants promote their Jeep Wrangler for off-road use.

## FIRST CAUSE OF ACTION
### (Negligence Against Defendant BLM)

45.   PLAINTIFF incorporates by reference the allegations of paragraphs 1 through 44 of this Complaint as though fully set forth herein.

46. California Health and Safety Code § 13007 provides, in pertinent part:

Any person who personally or through another willfully, negligently, or in violation of law, sets fire to, allows fire to be set to, or allows a fire kindled or attended by him to escape to, the property of another, whether privately or publicly owned, is liable to the owner of such property for any damages to the property caused by the fire.

47.   At all relevant times, Defendant BLM was and is a branch of the U.S. Department of the Interior which manages and conserves public land in the State of California, including the area of San Diego County.

48.   At all relevant times, Defendant BLM maintained, inspected, and was responsible for the public land where the Chariot Fire originated.

49.   At all relevant times, Defendant BLM was obligated to exercise a high degree of care in the management and supervision of the public land where the Chariot Fire originated.

**COMPLAINT**

50.   At all relevant times, BLM employees were obligated to exercise a high degree of care in the maintenance and supervision of the public land where the Chariot Fire originated.

51.   At all relevant times, Defendant BLM provided, maintained, and was responsible for all BLM-owned vehicles including the JEEP.

52.   At all relevant times, Defendant BLM was under a duty to exercise reasonable care to avoid exposing PLAINTIFF's Insureds and their properties to a foreseeable risk of harm.

53.   Defendant BLM was under a duty to comply with the standards of care set forth in Health & Safety Code §§ 13007 and 13008, Public Resources Code § 4435, and the Restatement of the Law (Second) of Torts, §§ 413, 416, and 427.

54.   Defendant BLM was under a duty to take precautions against the risk of fire posed by the weather conditions on the date of The Chariot Fire.

55.   Defendant BLM knew or should have known that traveling over tall and heavy brush in a hazardous fire area would increase the risk of fire.

56.   Defendant BLM breached their duties by their acts, omissions, and/or carelessness in failing to take fire-preventative measures, failing to operate the JEEP in such a manner as to avoid sparking a fire, and/or failing to extinguish the Chariot Fire once it began.

57.   Defendant BLM and their respective agents and employees, breached their duties in one or more of the following ways:

    a.   Failing to use proper/due care in operating the JEEP in a hazardous fire area;

    b.   Failing to clear debris from the undercarriage of the JEEP before traversing areas in and around the Julian/Butterfield Ranch Resort area;

    c.   Failing to take reasonable precautions to ensure against the start and

9

**COMPLAINT**

spread of fire;

d.  Failing to warn of any fire-related risk associated with the travel of the JEEP in the area where the Chariot Fire originated;

e.  Failing to ensure that the JEEP would not create a risk of fire; and

f.  Failing to exercise reasonable care in supervising their employees and/or agents.

58.  The breach of Defendant BLM's aforementioned duties constitutes negligence and was a substantial factor in causing PLAINTIFF's damages alleged herein.

59.  The Chariot Fire was allowed to spread onto public and private property as a direct, proximate, and foreseeable result of the negligent acts, omissions, or carelessness of Defendant BLM.

60.  As the direct and proximate result of Defendant BLM's negligence, PLAINTIFF incurred damages in an amount to be proven at trial, which may exceed Three Hundred Ninety-Five Thousand Eight Hundred Forty Dollars and Thirty-Seven Cents ($395,840.37).

## SECOND CAUSE OF ACTION
### (Strict Product Liability Against CHRYSLER and DEALERSHIP)

61.  PLAINTIFF incorporates by reference the allegations of paragraphs 1 through 60 of this Complaint as though fully set forth herein.

62.  The CHRYSLER and DEALERSHIP Defendants designed, manufactured, distributed, and/or sold the subject JEEP.

63.  The subject JEEP did not perform as safely as an ordinary consumer would have expected it to perform when used or misused in an intended or reasonably foreseeable way.

64.  PLAINTIFF was harmed and incurred damages as a result of the JEEP's failure to perform safely.

**COMPLAINT**

65.   The JEEP's defective design and failure to perform safely was a substantial factor in causing PLAINTIFF's harm.

66.   The JEEP had potential risks, including but not limited to fire ignition, that were known and/or knowable in light of the scientific and mechanical/engineering knowledge that were generally accepted in the community at the time of the JEEP's design, manufacture, distribution, and sale.

67.   The potential risks, including but not limited to fire ignition, presented a substantial danger when the JEEP is used or misused in an intended or reasonably foreseeable way.

68.   Ordinary consumers would not have recognized the potential risks of using the JEEP, including but not limited to fire ignition.

69.   The CHRYSLER and DEALERSHIP Defendants knowingly, willfully, intentionally, and recklessly failed to adequately warn or instruct of the potential risks, including but not limited to fire ignition.

70.   PLAINTIFF was harmed and incurred damages as a result of the Defendants' failure to warn or instruct of the potential risks, including but not limited to fire ignition.

71.   The lack of sufficient warnings or instructions was a substantial factor in causing PLAINTIFF's harm and damages.

72.   The JEEP contained a manufacturing defect when it left the possession of the CHRYSLER and DEALERSHIP Defendants.

73.   The PLAINTIFF was harmed and incurred damages as a result of the manufacturing defect, which was a substantial factor in causing the PLAINTIFF's harm and damages.

74.   The CHRYSLER and DEALERSHIP Defendants acted with a willful and conscious disregard of the rights and safety of others.

///

///

**COMPLAINT**

### THIRD CAUSE OF ACTION
### (Negligence Against CHRYSLER and DEALERSHIP)

75.   PLAINTIFF incorporates by reference the allegations of paragraphs 1 through 74 of this Complaint as though fully set forth herein.

76.   The CHRYSLER and DEALERSHIP Defendants designed, manufactured, supplied, installed parts on, inspected, repaired, and/or labeled the subject JEEP.

77.   The CHRYSLER and DEALERSHIP Defendants were negligent in designing, manufacturing, supplying, installing parts on, inspecting, repairing, and/or labeling the subject JEEP.

78.   The CHRYSLER AND DEALERSHIP Defendants failed to adequately warn of the danger of the defective JEEP.

79.   PLAINTIFF was harmed and incurred damages as a result of CHRYSLER and the DEALERSHIP Defendants' negligence, which was a substantial factor in causing PLAINTIFF's harm and damages.

80.   The CHRYSLER and DEALERSHIP Defendants manufactured, distributed, and/or sold the subject JEEP.

81.   The CHRYSLER and DEALERSHIP Defendants knew or reasonably should have known that the JEEP was dangerous or likely to be dangerous when used or misused in a reasonably foreseeable manner.

82.   The CHRYSLER and DEALERSHIP Defendants knew or reasonably should have known that the users would not realize the danger.

83.   The CHRYSLER and DEALERSHIP Defendants became aware of this defect after the subject JEEP was sold.

84.   The CHRYSLER and DEALERSHIP Defendants failed to recall, retrofit, or warn of the danger of the subject JEEP.

**COMPLAINT**

85.  A reasonable manufacturer, distributor, or seller under the same or similar circumstances would have recalled and/or retrofitted the subject JEEP, and/or warned of the defect affecting the subject JEEP.

86.  The PLAINTIFF was harmed and incurred damages as a result of the defect and CHRYSLER and DEALERSHIP Defendants' failure to recall, retrofit, and/or warn of the product which was a substantial factor in causing the PLAINTIFF's harm and damages.

## FOURTH CAUSE OF ACTION
### (Trespass to Property Against All Defendants)

87.  PLAINTIFF incorporates by reference the allegations of paragraphs 1 through 86 of this Complaint as though fully set forth herein.

88.  PLAINTIFF's Insureds were the owners, tenants, and/or lawful occupiers of real and personal property damaged or impacted by the Chariot Fire.

89.  Defendants, and each of them, negligently caused the Chariot Fire to enter PLAINTIFF's Insureds' properties.

90.  PLAINTIFF's Insureds did not consent to Defendants causing the Chariot Fire to enter their properties.

91.  PLAINTIFF's Insureds were actually harmed and incurred damages as a result of the Defendants' actions, which were a substantial factor in causing PLAINTIFF's harm and damages.

## FIFTH CAUSE OF ACTION
### (Private Nuisance Against All Defendants)

92.  PLAINTIFF incorporates by reference the allegations of paragraphs 1 through 91 of this Complaint as though fully set forth herein.

13

**COMPLAINT**

93.   PLAINTIFF's Insureds were the owners, tenants, and/or lawful occupiers of real and personal property damaged or impacted by the Chariot Fire.

94.   Defendants, and each of them, by acting or failing to act, caused the Chariot Fire, which was harmful to health and obstructed the free use of property as to interfere with the comfortable enjoyment of life and property.

95.   The Chariot Fire interfered with PLAINTIFF's Insureds' use and enjoyment of their property.

96.   The PLAINTIFF's Insureds did not consent to Defendants' conduct or to the Chariot Fire destroying their real and personal property.

97.   An ordinary person would be reasonably annoyed or disturbed by the Chariot Fire damaging or destroying destroying their real and personal property or otherwise interfering with the comfortable enjoyment of life and property.

98.   PLAINTIFF was harmed and incurred damages as a result of Defendants' conduct, which was a substantial factor in causing PLAINTIFF's harm and damages.

99.   There was no public benefit to the Chariot Fire.

WHEREFORE, PLAINTIFF prays for judgment against Defendants, and each of them, and their respective agents and employees, and DOES 1 through 50, as set forth below:

1.   For monetary damages in an amount to be proven at trial, which may exceed $395,840.37;

2.   For attorneys' fees and cost of suit; and

3.   For such other relief as the Court deems just and proper.

///
///

14

**COMPLAINT**

1    Dated this 29th day of May, 2015      **GROTEFELD HOFFMANN**

2

3          s/Maura Walsh Ochoa

4          Maura Walsh Ochoa
         Attorneys for Plaintiff State Farm
5          General Insurance Company
         E-mail: mochoa@ghlaw-llp.com

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COMPLAINT**

# EXHIBITS

## TABLE OF CONTENTS

| Item | Page |
|------|------|
| Exhibit 1:  Plaintiff's Administrative Tort Claim | 1 |
| Exhibit 2:  Denial of Plaintiff's Administrative Tort Claim | 3 |

**COMPLAINT**

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit to Appropriate Federal Agency: | 2. Name, address of claimant, and claimant's personal representative if any. (See instructions on reverse). Number, Street, City, State and Zip code. |
|---|---|
| Bureau of Land Management; California Desert District<br>22835 Calle San Juan De Los Lagos<br>Moreno Valley, CA  92553 | State Farm General Insurance Company |

| 3. TYPE OF EMPLOYMENT<br>☐ MILITARY   ☐ CIVILIAN | 4. DATE OF BIRTH<br>n/a | 5. MARITAL STATUS<br>n/a | 6. DATE AND DAY OF ACCIDENT<br>07/06/2013 | 7. TIME (A.M. OR P.M.)<br>12:55 pm (approx) |
|---|---|---|---|---|

**8. BASIS OF CLAIM** (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary.)

Preliminary investigation has revealed that the subject fire began off Sunrise Highway approximately 9 miles southeast of Julian. The fire then jumped the Sunrise highway and burned around and through the Mount Laguna area.  The fire started after some brush became entangled in the undercarriage of a Jeep owned and operated by the Bureau of Land Management ("BLM"), causing grass west of Butterfield Ranch Resort to ignite.  The Jeep burned on the floor of the desert at the same time the fire began.  The fire then spread to the residential properties located in and round the Mount Laguna area.

| 9. | PROPERTY DAMAGE |
|---|---|

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

c/o Waylon J. Pickett, Grotefeld Hoffmann, 655 Montgomery Street, Suite 1220, San Francisco, CA 94111

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED. (See instructions on reverse side).

Damage to Claimants' Insureds' property and loss of use of property as a result of the "Chariot Fire".

| 10. | PERSONAL INJURY/WRONGFUL DEATH |
|---|---|

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

| 11. | WITNESSES |
|---|---|
| NAME | ADDRESS (Number, Street, City, State, and Zip Code) |
| | |

| 12. (See instructions on reverse). | | AMOUNT OF CLAIM  (in dollars) | |
|---|---|---|---|
| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights). |
| 379,489.37 | | | 379,489.37 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side).<br>*[signature]* | 13b. PHONE NUMBER OF PERSON SIGNING FORM<br>(415)344-9670 | 14. DATE OF SIGNATURE<br>05/12/2014 |
|---|---|---|

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government.  (See 31 U.S.C. 3729). | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

| Authorized for Local Reproduction<br>Previous Edition is not Usable<br>95-109 | NSN 7540-00-634-4046 | STANDARD FORM 95 (REV. 2/2007)<br>PRESCRIBED BY DEPT. OF JUSTICE<br>28 CFR 14.2 |
|---|---|---|

**INSURANCE COVERAGE**

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of the vehicle or property.

15. Do you carry accident Insurance?  ☐ Yes   If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number.  ☐ No

Claimant is an insurance carrier seeking subrogation.

16. Have you filed a claim with your insurance carrier in this instance, and if so, is it full coverage or deductible?  ☐ Yes ☐ No   17. If deductible, state amount.

N/A

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain these facts.)

N/A

19. Do you carry public liability and property damage insurance?  ☐ Yes   If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code).  ☐ No

N/A

**INSTRUCTIONS**

Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident. If the incident involves more than one claimant, each claimant should submit a separate claim form.

**Complete all items - Insert the word NONE where applicable.**

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY DAMAGES IN A **SUM CERTAIN** FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN **TWO YEARS** AFTER THE CLAIM ACCRUES.

**Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.**

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations. If more than one agency is involved, please state each agency.

The claim may be filled by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item number 12 of this form.

The amount claimed should be substantiated by competent evidence as follows:

(a) In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of the injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

(b) In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

(c) In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

(d) Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.

**PRIVACY ACT NOTICE**

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
   A. Authority: The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. Principal Purpose: The information requested is to be used in evaluating claims.
C. Routine Use: See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D. Effect of Failure to Respond: Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid."

**PAPERWORK REDUCTION ACT NOTICE**

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501. Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, DC 20530 or to the Office of Management and Budget. Do not mail completed form(s) to these addresses.

STANDARD FORM 95 REV. (2/2007) BACK

2
EXHIBIT 1



# United States Department of the Interior

OFFICE OF THE SOLICITOR

Pacific Southwest Region

2800 Cottage Way

Room E-1712

Sacramento, California 95825-1890

IN REPLY
REFER TO:

**DEC 2 2014**

<u>**Certified Mail - Return Receipt Requested**</u>

Waylon J. Pickett
Grotefeld Hoffmann
Attorneys At Law
655 Montgomery Street Suite 1220
San Francisco, CA 94111

Subject:    TS-0110- State Farm General Insurance Company (Robert & Patricia Adams;
Jack & Jessie Capps; John & Jamie George)

Dear Mr. Pickett:

You have filed tort claims on behalf of (see attached client's list) in the amount of $379,489.37
pursuant to the Federal Tort Claims Act, *28 U.S.C. §§ 2671-2680*, which provides for settlement
of claims for damages caused by the negligent act or omission of a government employee while
acting within the scope of his/her employment under certain specified circumstances.  These
claims have been referred to this office by the Bureau of Land Management (BLM) for
administrative determination.

The administrative record fails to disclose any factual or legal basis to support a finding that the
United States is responsible for the property damage claimed by your clients as a result of the
Chariot Fire on July 6, 2013. Therefore, these claims must be and are hereby denied.

If you are dissatisfied with this finding, you may resubmit this claim, together with your reasons
for reconsideration, to the Regional Solicitor, Pacific Southwest Region, 2800 Cottage Way,
Room E-1712, Sacramento, California 95825, within six months from the date of the mailing of
this decision, or you may file an action in the United States District Court within that same six
months.

Sincerely,

Clementine Josephson
Acting Regional Solicitor

cc:  Safety Officer-BLM

3
EXHIBIT 2

Grotefeld Hoffmann
Attorneys At Law
Waylon J. Pickett
State Farm General Insurance Company

1. Robert & Patricia Adams     Lot 102
2. Jack & Jessie Capps          Lot 4
3. John & Jamie George          Lot 3